## Scott v. Trinity Area School District

*August L. Sismondo* and *Maury D. Nusbaum*, for plaintiff.

*John Solomon,* for defendant.

DiSALLE, J., February 23, 1971.—This matter comes to us on a complaint in equity filed by the minor plaintiff who is 14 years of age, and a ninth grade student at Trinity Junior High School. The school district filed an answer and a hearing was held.

The complaint alleges that on October 20, 1970, the minor plaintiff received a letter from the school notifying him that he was suspended; that the board had attempted to have his foster mother waive his right to a hearing; that on November 16, 1970, he was notified that a hearing would be held on November 17, 1970; that hearings were held on November 17, 1970, and November 20, 1970; and that, despite counsel's request, no record was made of the proceedings. The allegations contained in paragraphs 26 to 32, inclusive, form the gist of the complaint, and are as follows:

"26. At the hearing of November 20, 1970, hearsay testimony was allowed, and accounted for a major portion of the evidence against plaintiff, Eugene Miller Scott.

"27. At the hearing of November 20, 1970, improper, extraneous and inflammatory remarks of members

of the board and school officials were permitted during the course of the hearing.

"28. At the hearing of November 20, 1970, counsel for plaintiff was not permitted to crossexamine all of the witnesses, or otherwise to represent plaintiff in an effective manner.

"29. At the hearing of November 20, 1970, school authorities were permitted to testify with regards to prior offenses of the student, even though such offenses were totally unrelated to the nature of the charges which the board was hearing.

"30. At the hearing of November 20, 1970, no record was made of the proceedings, even after requested by counsel for plaintiff, thus precluding any adequate review of the board's decision by higher authority.

"31. At the end of the hearing of November 20, 1970, no vote was taken of the board members or reported.

"32. On November 25, 1970, plaintiff, Eugene Miller Scott, was notified by Richard D. Bishop, Superintendent of the Trinity Area School District, by letter dated November 24, 1970, that he had been suspended for the remainder of the 1970-71 school year."

These allegations are denied in the answer.

At the hearing, two persons from the Child Welfare Services of Washington County testified in plaintiff's behalf. Generally, their testimony tended to support plaintiff's allegations. Also called were the assistant principal of the school, a member of the school board and the superintendent of schools. It was agreed by counsel that the sole issue before the court was whether or not the minor plaintiff had been given a proper hearing by the board within the meaning of the Public School Code.

Section 1318 of the Public School Code of March

10, 1949, sec. P. L. 30, art. XIII, 1318, 24 PS 13-1318, provides:

"Suspension and expulsion of pupils

"Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or misconduct, and any principal or teacher suspending any pupil shall promptly notify the district superintendent, supervising principal, or secretary of the board of school directors. The board may, after proper hearing, suspend such child for such time as it may determine, or may permanently expel him. Such hearings, suspension, or expulsion may be delegated to a duly authorized committee of the board."

Two of our sister counties have dealt with the problem of a "proper hearing" and have reached opposite results. In the case of Mando v. Wesleyville School Board, 35 Erie 74, a student was suspended from school. At the hearing, because of certain alleged statements made by a member of the board, she and her parents walked out, on the advice of counsel. She then brought a complaint in mandamus to secure reinstatement. In his order denying relief, Judge Laub reasoned that the legislature "never intended full dress, formal hearings in matters involving school discipline." However, it seems that the real reason for his decision was:

"Nowhere in the complaint is there an allegation that the plaintiffs demanded that the witnesses be sworn nor that they offered testimony, sworn or otherwise, of their own. There is no allegation that the chairman's decision, so prematurely reached, was adverse to plaintiffs. No facts, other than those recited above, appear in substantiation of the complaint that it was obvious a proper hearing would not be granted.

"It may well be that, had plaintiffs demanded that

the witnesses be sworn, the board would have sworn them, although we find no provision authorizing such procedure except in the case of professional employees. The plaintiffs may not now complain of a procedure in which they, by their silence, acquiesced. Furthermore, by their act in walking out before the hearing was over, they deprived the board of the opportunity to correct any procedural errors."

The matter of defining a proper hearing was also considered by Shull, P.J., in the case of Geiger, et al. v. Milford School District, 51 D. & C. 647 (C. P. Pike Co. 1944). In Geiger, the court said:

"Our act of assembly, as we have said, provides that a proper hearing shall be given to the accused; and, viewing what was done here with that thought in mind, we find from the facts which stand as admitted on the record in this case that this school board did give very considerable care and attention to this matter, to the end that Geiger and his parents were notified of the time and place of meeting of the school board; that Geiger and his mother appeared at that time and place; that they were informed of the charges against Edward N. Geiger; that thereafter, further investigation was made by a committee of the school board specially appointed for that purpose, which committee reported back to the board, apparently satisfied as to the truth of the charges; and that the board, upon this report and the reports made by the principal and, perhaps, others, entered this order or decree of expulsion. But in all this, though it may have been and, we take it, probably was convincing to the board of the truth of the charges, there was no stage of the proceedings at which Edward N. Geiger was given, under any construction of the words 'proper hearing', a proper hearing. A proper hearing can only be one held after an accused has had due and

reasonable notice of the nature of the offense charged, the names of his accusers, the time and place where he may, if he desires, appear before a tribunal having jurisdiction of the matter in question, and there be given opportunity to face his accusers, to hear their testimony, examine any and all witnesses testifying against him, have the right to offer testimony in his own behalf by himself and his witnesses if he so desires, and to be represented by counsel if he so elects."

We are in accord with this approach.

More recently, this problem was treated by the Court of Common Pleas of Delaware County in the case of Charles Stansbury, et al. v. Chester City School District, No. 3346 of 1970. In Stansbury, a complaint in equity was filed to compel the school district to adhere to the provisions of a resolution adopted by it setting forth certain procedural requirements for dealing with suspension and expulsion hearings.* After holding that equity did have jurisdic-

---

* "BE AND IT IS HEREBY RESOLVED, by the Board of School Directors of the School District of the City of Chester, in accordance with Section 1318 of Article 13 of the Public School Code, that: 1. Every Principal or Teacher in charge of a Public School may temporarily suspend any pupil on account of disobedience or midconduct. 2. In any such case, the Principal or Teacher shall give immediately a signed written statement of the facts and the name and address of the pupil to the Principal, (unless the temporary suspension is made by the Principal himself), and to the Superintendent of Schools, and to the School District Suspension and Expulsion Committee, notice to the said Committee to be given to the Director of the Home School Relations Office. 3. The powers of the Board are hereby delegated to a committee of three (3) members of the Board, appointed by the President of the Board from time to time, which Committee shall be known as Committee on Suspension and Expulsion of Pupils, and the appointment by the President to the said committee of Clarence H. Roberts, Edward Parry and Anthony Przedzial as the present members, is hereby approved. 4. Upon receipt by the

tion, Judge Diggins, in a well-considered opinion, said this:

"In the opinion of the Chancellor, the intent and purpose of this Resolution is good. It was promulgated to safeguard the interests of the pupils. However, the record amply discloses that the Administrative Group, acting under the authority of the Resolution, almost totally disregards its provisions with the result that heretofore the procedures leading to the suspension or expulsion are little, if any, better than those in vogue before the Resolution. Oftentimes the provisions for notice are omitted. Other times notice is orally given to the child only. Other times, a written notice to the parents is had but even there these notices have been woefully deficient. They do not state the nature of the hearing or of the offense charged, the name of the accuser, that the student may be represented by counsel, and if indigent counsel will be provided, that the student may produce witnesses etc. Witnesses are not sworn, incompetent and unverified testimony is al-

said Committee of a written report of the suspension of any pupil, the Committee shall, by written notice to the parents or guardian of the said pupil, fix a time and place for a hearing upon the suspension, enclosing a copy of the reported facts. Said notice shall be sent by certified mail and shall request the attendance of the pupil at the hearing. In addition the said notice shall state that the pupil and any person acting for him will have the right to hear the testimony of the accuser or accusers, examine witnesses, and offer testimony, and that the pupil may be represented by counsel. 5. The Committee shall make and retain a written record of the proceedings at the hearing and with the names of the persons in attendance. 6. As promptly as possible after the conclusion of the hearing, the Committee by written order may reinstate the pupil, suspend the pupil for as much further time as it may determine, or may permanently expel him. 7. A copy of the order of the Committee shall be sent by certified mail to the pupil in care of his parents or guardian, and to the Superintendent and Principal."

lowed, participation of lawyers, when present, is unduly limited, right against self-incrimination disregarded, and there are no guidelines on how the hearing should be conducted."

Since In re Gault, 387 U.S. 1 (1967), we have had to revise our thinking in treating the problems of juveniles. We do not say that hearings on matters of school discipline must have all of the formality of criminal court proceedings. However, if we expect our students to abide by our notions of fair play and due process, we should certainly lead the way in setting proper examples for them. The charges against Eugene Miller Scott are serious ones. If true, the suspension was entirely proper. However, if not true, they would remain an indelible blot on his record.

In a case decided more than 80 years ago (Commonwealth ex rel. Hill v. McCauley, 3 Pa. C.C. 77 (1887)) Judge Sadler ruled that where a student is to have a school hearing on a charge of misconduct, he must have notification which is ". . . so fully, plainly, and substantially described, that he might clearly apprehend it, realize its gravity and the possible harm which might come to him, if it were sustained, and thus be admonished of the necessity of preparing to meet it. He was entitled to know what testimony had been given against him, and by whom it had been delivered, and that the proofs be made openly and in his presence, with a full opportunity to question the witnesses and to call others to explain or to contradict their testimony."

In the instant case, we make no finding that the allegations of the complaint have been made out in plaintiff's case. In the absence of a record of the proceedings, we are unable to make such a determination.

As the Superior Court said in Hempfield Township Annexation Case, 211 Pa. Superior Ct. 180 (1967): "In the present case, since there was no transcript made of the hearing before the board and no hearing held by the court, we have no evidence to examine in order to test the propriety of the court's action." So here, we cannot say, in the absence of a record, whether a proper hearing was held by the school board. We do think that the charges are of such serious import as to warrant the necessity for a rehearing.

## ORDER

And now, February 23, 1971, this matter is remanded to the defendant school district to hold a proper hearing in a manner consistent with this opinion. Said hearing shall be held within 10 days hereof.

